UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 12-58-DLB

CHARLOTTE ANN LUNSFORD                                          PLAINTIFF

VS.

KENTUCKY CABINET FOR HEALTH AND
FAMILY SERVICES, ET AL.                                          DEFENDANTS


AND                              MEMORANDUM OPINION AND ORDER


CIVIL ACTION NO. 12-136-DLB

CHARLOTTE ANN LUNSFORD                                          PLAINTIFF

VS.

AUDREY TAYSE HAYNES, ET AL                                    DEFENDANTS

* * * * * * * * *

## I.    INTRODUCTION

Plaintiff Charlotte Ann Lunsford commenced two *pro se* lawsuits against (1)

Defendants Stephen J. Elsbernd[1], Kentucky Cabinet for Health and Family Services

(CHFS) and Kenton County in Covington Civil Action No. 12-CV-58-DLB and (2)

Defendants Audrey Tayse Haynes as Secretary of CHFS, James Grace as Assistant

Director of CHFS's Department for Community Based Services (DCBS), Karen Ivy, Angie

---

[1] In the Court's June 29, 2012 Memorandum Opinion and Order (Doc. # 20), all claims against Elsbernd were dismissed due to prosecutorial immunity.  Accordingly, any claims asserted against Elsbernd in Covington Civil Action No. 12-CV-136-DLB are also dismissed for the reasons set forth in the Court's prior opinion.

Niesen, Stacey White, Stephen J. Elsbernd, and Judge Christopher Mehling of the Kenton Family Court in Covington Civil Action No. 12-CV-136-DLB, asserting various constitutional violations of her Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights.  Plaintiff also alleges state law claims for intentional and negligent infliction of emotional distress.

This matter is before the court for an initial screening.  28 U.S.C. §1915(e)(2). Federal law requires the Court to conduct a preliminary review of civil rights complaints and to dismiss an action that is (1) frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks damages from a defendant who is immune from such relief.  *Id.*  Because Plaintiff is not represented by an attorney, her complaint is held to a less stringent standard than those drafted by attorneys.  *Wagenknecht v. United States*, 533 F.3d 412, 415 (6th Cir. 2008) (quoting *Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983)).  At this stage, the Court accepts the factual allegations as true and all claims are liberally construed in Plaintiff's favor.  *Urbina v. Thomas*, 270 F.3d 292, 295 (6th Cir. 2001).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Charlotte Lunsford is the biological mother of a female minor, S.A.  (12-58; Doc. # 1, at ¶ 4).  Lunsford has a learning disability and an IQ of 62.  (*Id.* at ¶ 3).  On June 6, 2008, two charges were filed against Lunsford in Kenton Family Court, Case No. 08-J-01048, *In re: S.A.*, for dependency and neglect.  (12-136; Doc. # 1-14, at 1).  At a hearing on October 14, 2008, Lunsford temporarily lost custody of her child, and the Kenton Family Court ordered that custody be given to Lunsford's aunt, Theresa Lunsford, who was married to Lunsford's biological uncle, Raleigh Lunsford.[2]  (12-58; Docs. # 1, at ¶ 4; # 1-1, at 18).  The

---

[2] Lunsford asserts that Theresa and Raleigh have since separated.  (12-136; Doc. # 1, at 10).

Court also ordered that Lunsford pay child support in the amount of $195.00 per month, effective November 1, 2008.  (12-58; Docs. # 1, at ¶ 4; # 1-1, at 18).  However, according to Lunsford, no signed order to this effect was ever entered with the Court.  (12-58; Doc. # 1, at ¶ 4).  Thereafter, on April 2, 2009, the court ordered that Theresa Lunsford be given permanent custody of the child.  (*Id.*).  In December 2009, Lunsford's relationship with her aunt "soured," and she was not allowed to see or visit her daughter.  (12-58; Doc. # 5, at ¶ 4).

On November 23, 2009, the Office of the Kenton County Attorney filed a misdemeanor criminal complaint against Lunsford alleging that she failed to provide support for her daughter in accordance with a court order issued by the Kenton Family Court.  (12-58; Doc. # 1-1, at 20).  The misdemeanor complaint was reviewed by Kenton District Court Judge Douglas Grothaus, and he issued a warrant for Lunsford's arrest.  (*Id.*).

In 2011, Lunsford retained private counsel to file a motion in Kenton Family Court requesting that her child support obligation be suspended and that the Court vacate the original Order of child support pursuant to Kentucky Rule of Civil Procedure 60.02(f).  (12-58; Doc. # 1-1, at 14-15).  On August 11, 2011, Judge Christopher J. Mehling entered an Order modifying Lunsford's obligation to pay child support from $195.00 to $60.00 per month based on a finding that Lunsford has "a full-scale IQ of 62 with significant adaptive deficits in communication and socialization [and] is unable to be gainfully employed." (*Id.*).  Additionally, Lunsford was ordered to pay $10.00 per month toward any arrearage.  (*Id.*).  The Court denied the motion to vacate the original child support Order because it does not have the power to modify or vacate child support retroactively.  (*Id.*).  Lunsford appealed the Court's Order, which is currently pending before the Kentucky Court of Appeals.  (12-

3

58; Doc. # 1-1, at 21).  On October 19, 2011, Lunsford was arrested on the 2009 warrant for non-payment of child support.[3]  (12-58; Doc. # 1, at ¶ 8).

After a two year period of Theresa not allowing Lunsford to see her child, the Kenton Family Court ordered that Lunsford was entitled to supervised visits with her daughter.  (12-136; Doc. # 1, at 10).  However, it took five months for Theresa to abide by the Court's order, and she cancelled visitations four times.  (*Id.*).  Lunsford claims that Theresa is unfit to care for her child because she cannot maintain a permanent residence and has moved three times in one year, sometimes residing in motels.  (*Id.* at 10-11).  Moreover, Theresa leaves the child with "Raleigh, a sex offender and his sister frances (sic), who molested [Lunsford] from the age of 5 to 12 years."  (*Id.* at 10).  Theresa has also had her supervised visitation rights with her own son from a previous marriage suspended in May 2011.  (12-136; Doc. # 1-11, at 1).  Plaintiff believes that the recommendations of the CHFS and its employees and the decisions of Judge Mehling to give permanent custody of the child to Theresa "shock the conscience" or "offend the community's sense of fair play and decency."  (12-136; Doc. # 1, at 10).  Plaintiff requests an injunction requiring the CHFS to remove the child from Theresa's care and that the child be returned to Lunsford.  (12-58; Doc. # 12, at 3; 12-136; Doc. # 1, at 11).

## III.    ANALYSIS

### A.    Claims Against Defendant CHFS

#### 1.    Sovereign Immunity

Plaintiff alleges that the CHFS violated several of her constitutional rights by

---

[3] It is unclear whether the misdemeanor non-support charges are currently pending against Lunsford.

removing her minor child from her custody "without legal authority." (12-58; Doc. #12, at

3). However, the Court need not determine whether Plaintiff has established valid

constitutional violations because the CHFS is protected from suit in federal court based on

sovereign immunity provided by the Eleventh Amendment to the United States Constitution.

*Akers v. Alvey*, 338 F.3d 491, 497 (6th Cir. 2003); *see also Grider Drug LLC v. Kentucky*,

No. 3:08-77, 2009 WL 1044935, at *2 (E.D. Ky. April 20, 2009). Clearly established

precedent dictates that "a suit in federal court by private parties seeking to impose a liability

which must be paid from public funds in the state treasury is barred by the Eleventh

Amendment." *Quern v. Jordan*, 440 U.S. 332, 337 (1979)). The Eleventh Amendment

therefore bars monetary claims brought under § 1983 against a state and its agencies

*Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009). Consequently, Plaintiff's claims

against the CHFS for any monetary damages presents a jurisdictional bar to suit in federal

court. *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993).

### 2. Domestic Relations Exception

Plaintiff also seeks injunctive relief pursuant to § 1983. She requests an injunction

requiring the CHFS to remove her child from Theresa Lunsford's care and return the child

to her. (12-136; Doc. # 1, at 11; 12-58; Doc. # 12, at 3). However, even if Plaintiff were

entitled to such relief, federal courts do not have jurisdiction to resolve domestic relations

matters. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Catz v. Chalker*, 142 F.3d

279, 290 (6th Cir.1998). Rather, state courts have exclusive jurisdiction over these

matters. *Ankenbrandt*, 504 U.S. at 703-04; *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir.1995).

While Lunsford styles her claims as civil rights violations, she is actually challenging the

Kenton Family Court child custody decisions by requesting that her daughter be removed

5

from the home of Theresa Lunsford and returned to her.  *See Partridge v. State of Ohio*, 79 F. App'x 844, 845 (6th Cir. 2003).  Accordingly, the Court lacks jurisdiction to issue the relief sought by Plaintiff.

**B.    Claims Against Defendant Judge Christopher Mehling**

In her Complaint, while acknowledging that Kenton Family Court Judge Mehling is entitled to judicial immunity, Plaintiff seeks an injunction requiring Judge Mehling to recuse himself from the underlying state court proceeding.  It is well established that state court judges enjoy absolute immunity from federal damage suits for acts performed in their judicial capacities, except for acts done in the clear absence of jurisdiction. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citing *Mireles v. Waco*, 502 U.S. 9 (1991) (*per curiam*)). At common law, this immunity only shielded judges from claims for money damages. *Pulliam v. Allen*, 466 U.S. 522, 541-43 (1984).  In 1996, however, the Federal Courts Improvement Act amended 42 U.S.C. § 1983 to expressly provide that in "any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  This language "explicitly immunizes judicial officers against suits for injunctive relief."  *Roth v. King*, 449 F.3d 1272, 1286 (D.C. Cir. 2006); *Gilbert v. Ferry*, 401 F.3d 411, 414 n.1 (6th Cir. 2005).

The rulings and actions taken by Judge Mehling as described in the Complaint were unquestionably judicial in nature.  *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir.1994) (state judge's orders in child custody and visitation proceedings "affected the rights only of the individual plaintiffs in specific judicial proceedings" and thus were "paradigmatic judicial acts" entitling the judge to absolute judicial immunity).  While a judge may be held liable for

6

wrongful acts taken "in the complete absence of all jurisdiction," this exception only applies where "a matter was clearly outside the court's subject matter jurisdiction." *Marshall v. Bowles*, 92 F. App'x 283, 285 (6th Cir. 2004) (domestic relations commissioner entitled to absolute judicial immunity against claims for injunctive and monetary relief).

The Kenton Family Court is a division of the Kenton Circuit Court–a court of general jurisdiction–and has jurisdiction over a variety of domestic relations matters, including child custody, visitation, and maintenance and support. K.R.S. § 23A.100(1). Moreover, Plaintiff has not asserted that Judge Mehling lacked authority to act, only that he wrongly exercised that authority. Such a claim does not deprive Judge Mehling of judicial immunity. *See King v. Love*, 766 F.2d 962, 966 (6th Cir.1985). Because the claims described in the Complaint clearly fall within the type of claims barred by the doctrine of absolute judicial immunity, Plaintiff fails to state a claim upon which relief may be granted and is not entitled to injunctive relief.

## C.    Claims Against Defendant Kenton County

The liability of local government entities cannot be premised on a theory of *respondeat superior*. *Doe v. Claiborne Cnty.,* 103 F.3d 495, 505-06 (6th Cir. 1996). Therefore, a governmental entity can only be held liable on the basis of its own conduct. *Soper v. Hoben*, 195 F.3d 845, 853-54 (6th Cir. 1999). To prevail on a § 1983 claim against a municipality, a plaintiff must establish: (1) that she suffered a deprivation of a constitutionally protected interest; and (2) the alleged deprivation was caused by an official policy, custom, or usage of the municipality. *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Id.* at 691.  In other words, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir.1987), *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir.2001)).  Under § 1983, a plaintiff may only hold a governmental entity liable where its official policy or custom was the "moving force" behind the deprivation of an individual's constitutional rights. *Monell*, 436 U.S. at 694.

In the present case, Lunsford does not allege the existence of a policy or custom of Kenton County resulting in the alleged constitutional violations.  Rather, any claim she has against the County appears to be based on the conduct of Elsbernd in prosecuting her for misdemeanor non-support.  Even if Elsbernd's conduct was found to be unconstitutional, the incident alleged in the complaint is a one-time occurrence. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir.1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). Consequently, any claims against Defendant Kenton County will be dismissed for failure to state a claim.

One final matter deserves brief comment.  Lunsford alleges that when she was five years old, the County "allowed and permitted her aunt and uncle to molest, and rape her, steal and waste her SSI monies, and did nothing about it."  (12-58; Doc. # 12, at 3). Despite these allegations, the Due Process Clause does not normally require a municipality "to protect the life, liberty, and property of its citizens against invasion by private actors."

8

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). However, there are two exceptions to the *DeShaney* rule. Under the first exception, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199-200. Under the second exception, a plaintiff may bring a substantive due process claim when the State "creates a perilous situation that renders citizens more vulnerable to danger at the hands of private actors." *Schroder v. City of Fort Thomas*, 412 F.3d 724, 728 (6th Cir. 2005). In the instant case, neither of the two exceptions apply, and therefore any claims against the County for harm Lunsford suffered as a child due to the actions of her aunt and uncle are dismissed.

### D.    Claims Against Defendants Haynes, Grace, Ivy, White and Niesen[4]

Plaintiff also asserts various constitutional claims against Audrey Haynes as the Secretary of the CHFS. However, the allegations against Secretary Haynes fail to state a claim. In her Complaint, Plaintiff alleges nothing more than that Haynes, as Secretary of CHFS, "is in charge and control of the following claims." (12-136; Doc. # 1, at 2). The liability of supervisory officers under 42 U.S.C. § 1983 cannot be based upon a *respondeat superior* theory. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011). Furthermore, Plaintiff's complaint fails to include specific factual allegations regarding any act or omission by Defendant Haynes. A *pro se* complaint that simply names a person as a defendant without alleging specific conduct by that individual is subject to summary

---

[4] Plaintiff does not specify whether the claims against Defendants Haynes, Grace, Ivy, Niesen and White are brought in their official or individual capacities. Since any claim brought in their official capacities would be identical to a claim brought against the state, the Court will address these claims as brought in their individual capacities.

9

dismissal as frivolous.  *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1994).  Likewise, besides mentioning the names of Defendants Karen Ivey and Stacey White and that they are supervisors, Plaintiff fails to allege any factual allegations regarding their involvement in the instant matter.  Accordingly, Plaintiff's claims against Defendants Haynes, Ivey and White are dismissed.

Plaintiff also asserts claims against James Grace, the Assistant Director of the Cabinet's DCBS, and Angie Niesen, the social worker that conducted the investigation in 2008 and recommended placing the child with Theresa Lunsford.  Although Plaintiff does not specify her exact claims against each Defendant, she appears to allege that Niesen failed to conduct a proper investigation and that her report and recommendation to the Kenton Family Court contains false and defamatory statements.  Against Grace, Plaintiff claims that he failed to investigate her allegations that the child's welfare was in danger because Theresa was unfit to care for the child.[5]

It is well established that social workers who initiate judicial proceedings against those suspected of child abuse or neglect perform a prosecutorial function and are thus entitled to absolute immunity.  *Meyers v. Franklin Cnty. Court of Common Pleas*, 81 F. App'x 49, 53-54 (6th Cir.2003). The Sixth Circuit has also repeatedly held that social workers are absolutely immune for actions that are "intimately associated" with the judicial phase of proceedings relating to the welfare of the child.  *Rippy v. Hattaway*, 270 F.3d 416, 422 (6th Cir.2001).  This quasi-judicial immunity would prohibit any claim against Defendant Niesen based upon her function of advising the court regarding the best interests of the

---

[5] According to the exhibits attached to Plaintiff's Complaint, Plaintiff's boyfriend, Dennis Phillips, sent Grace a letter on February 18, 2010 alerting him of such allegations.  (12-136; Doc. # 1-7).

child, even if she was incorrect in her assessment. *See id.* Even if Niesen made intentional misrepresentations in her report and recommendation, she would still be entitled to absolute immunity. *See Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 726 (6th Cir. 2011). This immunity also extends to claims relating to a failure to investigate. *Id.* (citing *Rippy*, 270 F.3d at 421-23). Accordingly, Niesen is entitled to absolute immunity for any claims relating to her failure to investigate and any false statements or misrepresentations in her report and recommendation to the Court.

Plaintiff's allegations against Grace also fail to state a claim. Put simply, Plaintiff has not alleged any facts that would support a violation of her constitutional rights. Plaintiff's boyfriend sent a letter to Grace in February 2010 notifying him that he believed Theresa Lunsford was unfit to care for Plaintiff's child. First, the custody determination was within the sole discretion of the Kenton Family Court, and Grace had nothing to do with the initial investigation or recommendations to the Court in 2008. Moreover, the state proceeding is ongoing, and Plaintiff should have made a motion to modify the custody determination if she had reason to believe that her child was in danger. The Due Process Clause does not provide individuals with an affirmative right to state protection. *DeShaney*, 489 U.S. at 198. In *DeShaney*, the Supreme Court reaffirmed that state officials are not liable for injuries resulting from the acts of independent third parties. *Id.* at 196 ("[O]ur cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests of which the government itself may not deprive the individual."). Simply sending a letter to a random state employee is not enough to hold him liable for the alleged constitutional violations. Consequently, any claims against Grace for a failure to investigate

are dismissed.

### E.   *Younger* Abstention Doctrine

Finally, Plaintiff's claims are also barred by the *Younger* abstention doctrine.  In *Younger v. Harris*, 401 U.S. 37, 43-45 (1971), the Supreme Court held that federal courts must abstain from adjudicating a matter that is properly before it in deference to ongoing state criminal proceedings.  *See also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (extending the doctrine to encompass civil and administrative proceedings).  Abstention in favor of state court proceedings is appropriate where there exists: (1) an ongoing state proceeding; (2) an important state interest; and (3) an adequate opportunity in the state judicial proceedings to raise constitutional challenges. *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432; *Tindall v. Wayne Cnty. Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001).  However, if a plaintiff can demonstrate extraordinary circumstances such as bad faith, harassment, flagrant unconstitutionality or any other exception warranting equitable relief, then a federal court may decline to abstain. *Tindall*, 269 F.3 at 538 (citing *Fieger v. Thomas*, 74 F.3d 740, 750 (6th Cir. 1996)).

A review of Plaintiff's complaint makes clear that the Court must abstain from adjudicating any of Lunsford's claims.  First, Lunsford is a party in a state court child custody proceeding that is currently pending before the Kenton Family Court and the Kentucky Court of Appeals.  Lunsford seeks to interfere with the ongoing state proceeding by requesting an injunction requiring CHFS to remove her child from Theresa Lunsford's home and issue a restraining order to prevent Theresa from having contact with her child. Moreover, Lunsford asks for an injunction compelling Judge Mehling to recuse himself from the state court proceeding.  Next, the proceeding in state court involves an important state

12

interest–child custody matters.  *See e.g., Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) (finding that domestic relations issues are important state interests); *see also Meyers v. Franklin Cnty. Court of Common Pleas*, 23 F. App'x 201, 204 (6th Cir. 2001) ("cases out of the Supreme Court and this Court make it clear that abstention is generally appropriate in matters of family relations such as child custody.").  Finally, it is undisputed that the Kentucky state courts afford Lunsford the opportunity to raise any constitutional challenges she may have, and she has failed to show that the courts cannot or will not provide an adequate opportunity to raise her constitutional claims.  Indeed, the Court's independent review of the Kentucky Court of Appeal's docket reveals that Lunsford currently has two appeals pending related to the underlying state court action.  Lunsford even states that she is "confident that the Court of Appeals will vacate the custody [order]."  (12-136; Doc. # 1, at 12).

Furthermore, if Lunsford is dissatisfied with the outcome of her pending appeals, she must seek discretionary review in the Kentucky Supreme Court and, if necessary, seek certiorari in the United States Supreme Court.  Under the *Rooker-Feldman* doctrine, a federal district court may not hear an appeal of a case already litigated in state court.  "A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States."  *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)).

### F.    State Law Claims

In addition to alleging federal constitutional injuries, Plaintiff asserts two additional claims arising under Kentucky state law.  However, it is unnecessary for the Court to

address the merits of the state law claims.  "Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction.  If the federal claims are dismissed before trial, the state claims generally should be dismissed as well."  *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)) (internal quotations omitted); *see, e.g., Harper v. AutoAlliance Int'l, Inc.,* 392 F.3d 195, 210 (6th Cir. 2004); *Musson Theatrical v. Fed. Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.").

Because the Court's jurisdiction over Plaintiff's state law claims was supplemental under 28 U.S.C. § 1367©, and Plaintiff's federal claims have now been dismissed, the Court declines to continue exercising supplemental jurisdiction over the state law claims in this matter.  *See* 28 U.S.C. § 1367(c)(3).

## IV.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** that:

(1)     Plaintiff's federal claims are hereby **DISMISSED WITH PREJUDICE**;

(2)     The Court declines to exercise supplemental jurisdiction; therefore, Plaintiff's state law claims are hereby **DISMISSED WITHOUT PREJUDICE**; and

(3)     This case is hereby **STRICKEN** from the active docket of this Court.

This 13th day of July, 2012.



Signed By:

*David L. Bunning*

**United States District Judge**

G:\DATA\Opinions\Covington\2012\12-58 & 12-136 MOO dismissing complaints.wpd